**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CR-22-00218-PRW-2 |
| | ) | |
| STOLYNN SHANE STAMBAUGH, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>ORDER</u>

On November 14, 2022, the Court granted Defendant Stambaugh's Motion to Dismiss Count 3 of the Indictment as Unconstitutional (Dkt. 58). Forty-five days later, and less than two weeks before trial on the remaining count in the Indictment,[1] the United States filed a motion asking the Court to reconsider its November 14 order (Dkt. 67). The motion to reconsider neither asked the Court to extend the expired thirty-day deadline nor attempted to show good cause or excusable neglect for missing the deadline by two weeks—it didn't even acknowledge the obvious timeliness problem. The Court thus ordered the United States to show cause why its motion to reconsider was not untimely (Dkt. 69).

After responding to the show-cause order (Dkt. 72), and only one week before trial, the United States filed a motion to continue the trial based on the unavailability of a witness (Dkt. 76). The same day it filed the motion to continue, and some seven months after the

---

[1] At the time the United States filed its motion, trial was set to begin on January 10, 2023. (Dkt. 61).

original indictment, the United States brought a superseding indictment recharging the previously dismissed Count 3 and adding two new counts (Dkt. 79)—both of which seemingly could have been charged in the original indictment. The Court held a hearing on January 6, 2023, at which the United States conceded that its motion to reconsider was untimely and that there was no excuse for failing to address the timeliness issue in its motion.

For the reasons given below, the motion to reconsider is **DENIED**.

### *Background*

After the United States charged Stambaugh with violating 18 U.S.C. § 922(n), Stambaugh filed a motion to dismiss that charge on July 13, 2022. Stambaugh argued that the statute violated his Second Amendment right to receive a firearm under *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*.[2] *Bruen* held that when the government seeks to enforce a law that burdens the exercise of the Second Amendment right, challenges to such laws should be analyzed as follows:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."[3]

And because "[t]he job of judges is not to resolve historical questions in the abstract" but rather to "resolve *legal* questions presented in particular cases or controversies," *Bruen*

---

[2] 142 S. Ct. 2111 (2022).

[3] *Id.* at 2129–30.

makes clear that courts are "entitled to decide a case based on the historical record compiled by the parties."[4]

The day after Stambaugh filed his motion to dismiss, the United States requested that its normal response time be extended five days so that it would have adequate time to "respond appropriately" in light of *Bruen*.[5] The Court granted the United States the requested five-day extension (Dkt. 35). The United States ultimately filed a five-page response containing about three pages of analysis.[6] The response relied exclusively on mid-nineteenth-century surety laws to show that applying § 922(n) to Stambaugh was "consistent with the Nation's historical tradition of firearm regulation."[7]

The Court then set the motion for hearing—a clear signal to all involved that the motion was being taken quite seriously. The United States had over two months to prepare for the motion hearing that was ultimately held on October 5, 2022. At the hearing, and despite having the benefit of two months to prepare, the United States offered no new arguments, instead relying on the surety-statute argument made in its brief to meet its burden under *Bruen*.[8] It pointed to no other potential historical analogues to § 922(n), despite being pressed to do so, and having ample opportunities to do so.

---

[4] *Id.* at 2130 n.6.

[5] United States' Mot. (Dkt. 34), at 2.

[6] The scant response certainly can't be blamed on a lack of time. The United States was granted the full extension it requested, and even then filed its response approximately a day and a half before its deadline to do so.

[7] United States' Resp. (Dkt. 38).

[8] At the hearing, the United States pointed to a 1759 New Hampshire law that it claimed was another example of a surety statute, in support of its argument that surety statutes are

On November 14, 2022, the Court granted Stambaugh's motion to dismiss the § 922(n) count, concluding that the government failed to meet its burden to show that applying § 922(n) to Stambaugh would be "consistent with the Nation's historical tradition of firearm regulation." Forty-five days after the Court granted Stambaugh's motion to dismiss, the United States filed this motion to reconsider (Dkt. 67).

### Discussion

The United States' motion to reconsider is untimely, and the Court finds neither good cause nor excusable neglect to extend the deadline beyond thirty days. But even if the motion were timely, the motion still fails to satisfy any of the criteria for a motion to reconsider.

### A. Timeliness

Although the Federal Rules of Criminal Procedure contain no specific rule governing the timeliness of a motion to reconsider, Tenth Circuit precedent is clear that such a motion is untimely when it is filed beyond the appeal deadline. [9] Under 18 U.S.C. § 3731, the United States has thirty days to appeal an order dismissing a count of an indictment,[10] so a motion to reconsider must be filed within that timeframe. The Tenth

---

analogous to § 922(n). But as the Court explained in its November 14 order, that New Hampshire law isn't analogous to mid-nineteenth-century surety statutes, much less a historical analogue to § 922(n).

[9] *See United States v. Cook*, 599 F.3d 1208, 1212 (10th Cir. 2010); *see also* 18 U.S.C. § 3731. "Motions to reconsider are proper in criminal cases even though the Federal Rules of Criminal Procedure do not specifically provide for them." *United States v. Christy*, 739 F.3d 534, 539 (10th Cir. 2014).

[10] 18 U.S.C. § 3731 ("In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment

Circuit has recognized, however, that as a "rule of practice and procedure," a district court may extend the deadline under Rule 4(b)(4) of the Federal Rules of Appellate Procedure upon a finding of good cause or excusable neglect.[11]

Because the United States had thirty days from the Court's November 14 order to file its motion to reconsider, the motion filed on December 29 is untimely. For reasons not known to the Court, the motion does not request a deadline extension or even acknowledge its untimeliness. The United States addressed the timeliness issue only after the Court's show-cause order.

At the hearing on the motion to reconsider, the Court asked the United States why it neither requested a deadline extension nor even addressed or acknowledged the timeliness issue when it filed the motion. Counsel for the United States responded that "[n]either myself or my supervisor were aware of a thirty-day deadline. And I'm telling you that honestly. It's not something we knew about until the Court asked for cause. It was not something that was done intentionally or deliberately. It was done because we didn't know."

But two days before the United States filed its motion to reconsider, the United States and Stambaugh appeared for a bond-revocation hearing before Magistrate Judge

---

or information or granting a new trial after verdict or judgment, as to any one or more counts, or any part thereof, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution. . . . The appeal in all such cases shall be taken within thirty days after the decision, judgment or order has been rendered and shall be diligently prosecuted.").

[11] *In re Grand Jury Proceedings*, 616 F.3d 1186, 1196–97 (10th Cir. 2010) (alterations omitted).

Suzanne Mitchell. At that hearing, the same counsel for the United States told Judge Mitchell that the United States intended to file its motion to reconsider in the coming days. In response, counsel for Stambaugh said that he intended to fight the United States' attempt to seek reconsideration "tooth and nail" because "the order dismissing occurred more than thirty days ago," and "in light of [Federal] Rule of Appellate Procedure 4(b)," the United States' motion would be "out of time" and an attempt to reopen something that under "court rules and federal law" is "dead." Judge Mitchell then also noted the potential timeliness problem and asked the government attorney to address the issue, who responded that "in all honesty" the motion to reconsider was being handled by her supervisor. This exchange definitively establishes that the United States was aware, prior to filing the motion to reconsider, that the motion was almost certainly untimely. The United States' representation to this Court to the contrary, in response to a direct and unambiguous question, was false and violated the United States' duty of candor to the Court.[12]

  This course of conduct by the United States is regrettable. But putting that aside, the United States has belatedly argued—in response to the Court's show-cause order—that there is nevertheless good cause to extend the deadline. The first reason the United States offers is that Second Amendment jurisprudence is "an evolving field" in which "the

---

[12] Only after being confronted with this at the hearing did counsel for the United States acknowledge that the United States was aware of the untimeliness of the motion before it was filed, "[a]s of two days prior to when it was filed, yes." She also acknowledged that the timeliness issue "was something I brought up with [my supervisor] and this was the motion that we filed."

historical record is far from well-developed."[13] The United States also stresses *Bruen*'s "near total reliance on historical antecedents . . . and the limitations presented by the rule of party presentation."[14] This, says the United States, means that "intervening decisions either related to § 922(n) or to the *Bruen* analytical framework more generally" provide cause to extend the expired deadline.[15]

But there are two problems with this argument. First, the United States' motion overwhelmingly relies on cases predating *Bruen*, as well as on *Bruen* itself.[16] And second, even the post-*Bruen* cases were decided well before the thirty-day deadline that expired on December 14: *Range v. Attorney General*[17] and *United States v. Kays*[18] were both decided just two days after this Court's November 14 order, *United States v. Grinage*[19] was decided on December 5, *United States v. Perez-Garcia*[20] was decided on December 6, and *United States v. Fencl*[21] was decided on December 7. Even assuming these were "intervening decisions" that could support a motion to reconsider, there is no explanation for the United

---

[13] United States' Resp. (Dkt. 72), at 6.

[14] *Id.*

[15] *Id.* at 5–6.

[16] The United States' motion to reconsider cites thirty-five cases, only five of which were decided after *Bruen.*

[17] *Range v. Att'y Gen. United States*, 53 F.4th 262, 266 (3d Cir. 2022), *reh'g en banc granted, opinion vacated sub nom. Range v. Att'y Gen. United States of Am.*, No. 21-2835, 2023 WL 118469 (3d Cir. Jan. 6, 2023).

[18] No. 3:22-CR-00037, 2022 WL 17336578 (M.D. Tenn. Nov. 16, 2022).

[19] No. SA-21-CR-00399-JKP, 2022 WL 174203902022 (W.D. Tex. Dec. 5, 2022).

[20] No. 22-CR-1581-GPC, 2022 WL 17477918 (S.D. Cal. Dec. 6, 2022).

[21] No. 21-CR-3101-JLS, 2022 WL 174863632022 (S.D. Cal. Dec. 7, 2022).

States' failure to—at the very least—request an extension before the December 14 deadline.

The second reason the United States offers is that defense counsel reached out in "mid-December" to inform the United States that Stambaugh was interested in pleading guilty. According to the United States, it waited to file the motion to reconsider until after the deadline (again, without first asking for an extension) so that defense counsel wouldn't "be required to reply over the holiday season."[22] But the United States admits that defense counsel first contacted it to discuss a plea "likely either at or after the thirty-day mark and not before it."[23] And even if the United States had filed a timely motion to reconsider, a notice of change of plea would have obviated a need for a response, and even if the plea negotiations dragged on past the response deadline, defense counsel could have requested an extension of time to respond. This does not constitute good cause for an extension.

For the reasons just explained, the United States' motion is untimely, and the Court finds neither good cause nor excusable neglect to extend the expired deadline.

B.  *Motion to Reconsider*

Even if timely, the motion to reconsider falls woefully short. A court may grant a motion to reconsider "only when the court has misapprehended the facts, a party's position, or the law."[24] "The specific grounds which allow granting such motion include '(1) an

---

[22] United States' Resp. (Dkt. 72), at 7.

[23] *Id.* at 4 n.2.

[24] *United States v. Warren*, 22 F.4th 917, 928 (10th Cir. 2022) (quoting *United States* v. *Christy*, 739 F.3d 534, 539 (10th Cir. 2014)).

intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice.'"[25] But "[a] motion to reconsider is not a second chance for the losing party to make its strongest case or to dress up arguments that previously failed," and "such motions 'should not be used to revisit issues already addressed or advance arguments that could have been raised earlier.'"[26]

The United States claims that it "is not seeking to rehash old arguments."[27] Instead, its motion to reconsider "present[s] new potential analogues" and provides "a more fulsome historical record . . . based primarily on decisions that were rendered *after* this Court's November order."[28] But this isn't true. The overwhelming majority of the cases cited by the United States were decided long before the Court's order, and the very nature of the inquiry into "historical" analogues demonstrates that none of the analogues proposed by the United States are "new." These analogues were always available to the United States; it just chose to not rely on them. Nor does the United States point to any change in controlling law or new evidence; it instead attempts to both dress up its original argument and advance arguments it could have raised earlier. And though the United States disagrees with the Court's prior ruling, it shows no need to correct clear error or prevent manifest injustice. Nor does it demonstrate how the Court misapprehended the facts, the United States' position, or the law.

---

[25] *Id.* at 927 (quoting *United States v. Christy*, 739 F.3d 534, 539 (10th Cir. 2014)).

[26] *Id.* (quoting *United States v. Huff*, 782 F.3d 1221, 1224 (10th Cir. 2015)).

[27] United States' Resp. (Dkt. 72), at 6.

[28] *Id.*

Take for example the motion to reconsider's reliance on surety statutes. Not only is this rehashing of the argument made by the United States in its original response and rejected by the Court,[29] but the renewed surety-statute argument largely relies on *Bruen* and other cases *predating* that decision. Even for the cases decided after *Bruen*, the United States points to no surety-statute argument it could not have raised before the Court's November 14 order. The United States thus seems to ignore the standard its own motion recites: "[a] motion to reconsider is not a second chance for the losing party to make its strongest case or to dress up arguments that previously failed," and "such motions 'should not be used to revisit issues already addressed or advance arguments that could have been raised earlier.'"[30]

Aside from dressing up its surety-statute argument, and contrary to the United States' representation, none of the other "new potential analogues" were previously unavailable. Take for instance the United States' comparison to "historical laws disarming dangerous or untrustworthy people." In a case addressing whether a different statute—18 U.S.C. § 922(g)(3)—violates the Second Amendment under *Bruen*, the United States filed a brief before this Court on October 31, 2022, arguing that "Anglo-American law has categorically limited the gun rights of certain presumptively dangerous persons to promote public safety" and that § 922(g)(3) "is relevantly similar to regulations aimed at preventing

---

[29] The United States' brief also revisits the 1759 North Hampshire law the Court previously rejected as an analogue to § 922(n). United States' Resp. (Dkt. 7), at 21–22.

[30] *See* United States' Mot. (Dkt. 67), at 3 (quoting *Warren*, 22 F.4th at 927).

dangerous or untrustworthy persons from possessing and using firearms."[31] This argument was clearly available to the United States in responding to Stambaugh's motion to dismiss; it is demonstrably false to assert otherwise.[32]

Other "new potential analogues" that the United States offers are "historical laws allowing pretrial detention of indicted persons."[33] But the United States' argument again relies on *Bruen*, as well as on cases and law review articles predating *Bruen*. It makes no difference that, after the Court determined the United States failed to meet its burden in responding to Stambaugh's motion to dismiss, courts elsewhere have rendered decisions relying on arguments that the United States could have raised in this case but chose not to. Those rulings are not a "change in the controlling law," nor do they constitute "new

---

[31] Brief for United States at 18, *United States v. Harrison*, No. 22-CR-328-PRW (W.D. Okla. Oct. 31, 2022), ECF. No. 25. The brief filed in that case, unlike the five-page response to Stambaugh's motion to dismiss, consisted of thirty-five pages.

[32] On a related note, the United States also takes issue with the Court's rejection of its position that persons under indictment for felonies are categorically "dangerous." As mentioned before, Stambaugh has been twice released on bond pending trial, first in his state case that forms the basis for the § 922(n) charge, and then again in this case. In the time since the Court's order on the motion to dismiss, Stambaugh got himself in some trouble and had his pretrial release revoked, demonstrating that our system has mechanisms in place to protect the public from indictees who have actually been determined—in an individualized, adversarial proceeding before a neutral magistrate—to pose a danger to the public. But just this week, the United States acquiesced to Stambaugh's request to Judge Mitchell that she revisit the previous order of detention and release Stambaugh to a residential drug-recovery program (Dkt. 84). Judge Mitchell noted that "it's very unusual that the United States Attorney's Office is not opposing [his release] because that's not hard for them to do." Not only is it unusual, it is also difficult to square with the United States' position that Stambaugh is a "categorically dangerous" person and that the Court erred by concluding otherwise.

[33] United States' Resp. (Dkt. 72), at 10.

evidence previously unavailable."[34] As with historical laws disarming dangerous or untrustworthy people, the United States' comparison to historical laws allowing pretrial detention of indicted persons are "arguments that could have been raised earlier"[35] but were not.

The United States also seemingly faults the Court for relying on the "strictures of party presentation."[36] But "[t]he principle of party presentation is a fundamental premise of our adversarial system,"[37] and *Bruen* itself pointed district courts to the rule of party presentation and explained that lower courts are "entitled to decide a case based on the historical record compiled by the parties."[38] The United States was thus well aware that *Bruen* not only placed the burden squarely on it to develop the historical record, but also put it on notice that its failure to do so might be decisive. The United States nonetheless argues that "this Court's reliance on the premise of party presentation . . . underscores the appropriateness of a motion for reconsideration."[39] Given the fact, however, that the United States' motion consists entirely of previously available arguments (including arguments that were already briefed, argued, and rejected), entertaining its motion to reconsider would

---

[34] *State v. U.S. Env't Prot. Agency*, 989 F.3d 874, 885 (10th Cir. 2021).

[35] *See Warren*, 22 F.4th at 927 (quoting *United States v. Huff*, 782 F.3d 1221, 1224 (10th Cir. 2015)).

[36] United States' Mot. (Dkt. 67), at 20.

[37] *U.S. Env't Prot. Agency*, 989 F.3d at 885.

[38] *Bruen*, 142 S. Ct. at 2130 n.6.

[39] United States' Mot. (Dkt. 67), at 3 n.2.

give the government a "second bite at the apple."[40] Allowing the United States to raise previously available arguments in an untimely motion to reconsider would also effectively depart from the principle of party presentation, and "departures from the party presentation principle have usually occurred to protect a *pro se* litigant's rights,"[41] not the United States.

For the reasons given above, the United States has not shown good cause to extend the expired motion-to-reconsider deadline. But even if the motion were timely, the Court would still conclude that the motion fails to meet any of the motion-to-reconsider criteria. The United States has shown no change in controlling law, no new evidence, and no need to correct clear error or prevent manifest injustice.

### Conclusion

The Court does not fault the United States for asking the Court to reconsider its November 14 order. Indeed, this ruling has nothing to do with the United States' disagreement with the Court's legal conclusions on a novel question. It instead has everything to do with the United States' course of conduct here—letting the time to appeal or seek reconsideration lapse; filing an untimely motion that fails to request an extension or even mention the timeliness issue; misrepresenting to the Court that it did not know about the thirty-day deadline; making after-the-fact, near-frivolous arguments that a deadline extension is warranted; and insisting that it is not seeking a second bite at the apple when, in truth, it is doing exactly that.

---

[40] *See* United States' Resp. (Dkt. 72), at 3.

[41] *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (internal quotations omitted).

The United States' motion to reconsider is **DENIED**.

**IT IS SO ORDERED** this 12th day of January 2023.

PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE